UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DIANE PERITZ,

**VERIFIED COMPLAINT**

                Plaintiff,

**Docket No.:**

    -against-

Jury Trial Demanded

NASSAU COUNTY BOARD OF COOPERATIVE
EDUCATIONAL SERVICES, BONNIE HELLER,
JANET WEISEL,

                Defendants.
-------------------------------------------------------------------X

      Plaintiff, DIANE PERITZ, by and through her attorney, Mindy Kallus, for her Complaint

against Defendants, NASSSAU COUNTY BOARD OF COOPERATIVE EDUCATIONAL

SERVICES (hereafter referred to as "BOCES"), BONNIE HELLER, and JANET WEISEL,

hereby alleges, upon knowledge as to herself and her own actions, and, upon information and

belief, as to all other matters, as follows:

### JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. §

121101, and 42 U.S.C. 12112(a), et seq. and under New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law, 290, et seq.

2.    This Court has jurisdiction pursuant to:

        a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil

        actions arising under the Constitution, laws or treaties of the United States;

        b. 28 U.S.C. 1367, which gives district courts supplemental jurisdiction over state

        law claims.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) one or more of the Defendants reside within this judicial district; (2) the events which gave rise to the Plaintiff's claims occurred in Nassau County which is located in the Eastern District of New York;

## PARTIES

4.      Plaintiff, DIANE PERITZ, is a resident of Nassau County, New York (hereafter referred to as "Plaintiff"). At all times relevant hereto until her termination, Plaintiff was employed as a probationary employee of NASSAU COUNTY BOARD OF COOPERATIVE SERVICES (referred to hereafter as "BOCES") until her termination. She was an experienced Occupational Therapist with 16 years of experience throughout the New York City area.

5.      Throughout her employment, BOCES was Plaintiff's employer as defined in New York Executive Law § 290. BOCES is an educational organization that provides teaching services and therapies to special needs children.

6.      Defendant BONNIE HELLER is and was the principal of the Nassau County BOCES Rosemary Kennedy School, lower division.

7.      Defendant JANET WEISEL is the BOCES Supervisor of Occupational Therapists and supervised Plaintiff.

## FACTS

8.      Plaintiff was initially hired by BOCES in March of 2015 as a part-time employee in the field of occupational therapy. When she was offered the BOCES position by Weisel, who would become her supervisor, there was much discussion between Plaintiff and Weisel about the permanency of the position offered to her because the Civil Service deadlines relating to BOCES and the timeline imposed by Weisel required Plaintiff to leave her position in New York City. Plaintiff's New York City position was a permanent position that she had held for several years.

2

The New York City position was fulfilling except for a very long commute of more than two hours in each direction. The commute for the new position in Nassau County, however, was twenty minutes long.

9.   In April of 2015, Weisel asked Plaintiff to become full time at BOCES because Weisel explained that Plaintiff was doing a wonderful job. Prior to accepting the position, Plaintiff asked Weisel whether the position was permanent because she was then also working as a part-time therapist for the City of New York.

10.   Weisel assured Plaintiff that the BOCES position would be permanent because occupational therapists and physical therapists employed by BOCES receive tenure nearly automatically.

11.   On accepting the offer of a full-time position at BOCES, Plaintiff was placed in two schools—the Center for Community Adjustment (hereafter, "CCA") and the Jerusalem Avenue School.

12.   Plaintiff was first observed by Weisel in May of 2015 at CCA. Weisel determined that the observation was satisfactory and Plaintiff was asked to work the summer session, which would not have happened if she had not been doing well.

13.   Plaintiff was then informed that she would be observed twice more before receiving tenure which was expected to take place in the early fall.

14.   Plaintiff subsequently requested dates for the additional two observations. Weisel failed to schedule these observations on a timely basis, but assured Plaintiff that the observations would not interfere with receiving tenure.

15.   While working in the summer session, Plaintiff woke up on August 11, 2015 in great pain.

16.   Plaintiff was unable to go to work that day and immediately went to see Dr. Beer of Long Island Spine.  Dr. Beer ordered an epidural and MRIs.

17.   When Plaintiff's condition worsened, Plaintiff spoke to Assistant Principal Barrett and volunteered to come to school in a wheel chair in order to finish her summer paperwork.

18.   Although Assistant Principal Barrett agreed that Plaintiff could use a wheel chair, Weisel advised her that she would not be permitted to come to the school but that Weisel would complete the paperwork.

19.   Weisel subsequently commended Plaintiff for her notes and organizational skills which made Weisel's task easier.

20.   Plaintiff spent the rest of the summer resting and getting treatment for her back.  Her doctor had diagnosed the condition as spinal stenosis and stated that he believed that the condition would improve somewhat.

21.   At the end of the summer, Plaintiff was notified by mail that she would be placed in the fall with the CCA (which had expressly asked her back) and with the Rosemary Kennedy School.

22.   Toward the end of the summer, Plaintiff requested an accommodation for her back condition.  Plaintiff's doctor prepared a letter on August 31, 2015 requesting an accommodation for Plaintiff based upon her back condition.

23.   Defendants, however, failed to engage in an interactive process and failed to accommodate Plaintiff's disability which would have permitted Plaintiff to perform the functions of her job in a reasonable manner.

24.   Although Weisel repeatedly advised Plaintiff that she would be accommodated, Defendants failed to accommodate Plaintiff and instead terminated her to be effective November 5, 2015.

4

25.   Prior to suffering from spinal stenosis, Plaintiff's supervisors and BOCES treated Plaintiff as a respected occupational therapist. After sustaining the back condition, Defendants took retaliatory actions which led up to the decision not to grant Plaintiff tenure and to terminate her. Defendants' actions were also discriminatory because virtually all non-disabled therapists employed by BOCES received tenure.

26.   During the week before the 2015/2016 school year, Plaintiff called Weisel to discuss her back condition and weakness that were improving slowly, Plaintiff suggested taking off until she was stronger. Weisel asked instead for a doctor's letter seeking an accommodation for the disability.

27.   A meeting regarding the accommodation requested by Plaintiff was scheduled for September 11, 2015. The meeting was run by Selma Shelton of BOCES with the school principals on the phone. Weisel and Carmine Scerra were also at the meeting. A follow up email summarized the plan which was agreed to by the CCA, Chris Korolczuk and by John Picarello, a principal of the Rosemary Kennedy School.

28.   BOCES agreed to the accommodation at the meeting and Plaintiff was assured that the accommodation would be implemented. The accommodation involved the use of aides to assist with lifting. No one advised Plaintiff that anything else needed to be done.

29.   Indeed, Weisel assured Plaintiff that the accommodation would be implemented and she should not be concerned.

30.   Weisel and BOCES personnel disregarded the terms of the accommodation and did not abide by the plan.

31.   After the accommodations for disability were allegedly reached, the second and third evaluations of Plaintiffs took place and reports were signed by Weisel and one of the school principals. The evaluations were critical of Plaintiff.

32.   On Oct 2, 2015, Peritz was given a letter in the office of the Rosemary Kennedy School signed by Principal Bonnie Heller stating that Heller wanted to have a disciplinary meeting. At that time Plaintiff had never met Heller.

33.   Bob Dreaper, Plaintiff's union representative was present at the October 2, 2015 meeting it became clear at the meeting that a paraprofessional in one of the Plaintiff's sessions had complained about Plaintiff in relation to her lifting. The paraprofessional had not been made aware of Plaintiff's disability or of the accommodation granted to her. Parties at the meeting also discussed an earlier observation of Plaintiff involving a somnolent medicated student who did not know Plaintiff. At the conclusion of the meeting Plaintiff was advised to get Dr. Beer to update the request for an accommodation, which Plaintiff did on Oct 11.

34.   A phone conference was subsequently held regarding the updated accommodation and the parties agreed that the plan would be implemented.

35.   Nevertheless, the letter summarizing the meeting was biased and the union representative agreed that Plaintiff would write a response which she did.

36.   There is no question that Plaintiff is skilled at working with the population at the Rosemary Kennedy School, having worked with such students in home care for more than 10 years.

37.   Heller subsequently rejected the accommodation even though she had never met or spoke to Plaintiff regarding her condition.

38.   A meeting was subsequently held on October 20, 2015. Plaintiff was advised that her termination date was the fifth of November.

39.   Plaintiff was terminated as of November 5, 2015. Contrary to the terms of the CBA Plaintiff did not receive 30 days' notice as required. Indeed, if Plaintiff had been employed past November 5, she would have been granted tenure.

40.   Upon Plaintiff's termination, Plaintiff filed a grievance and engaged in the grievance process with BOCES. The parties failed to reach a resolution of the grievance process.

41.   On February 1, 2016, Plaintiff filed a timely Notice of Claim against BOCES--within ninety days of Plaintiff's termination. A true and accurate copy of the Notice of Claim is attached hereto as Exhibit A.

42.   On April 21, 2016, Plaintiff filed a timely Charge with the Equal Employment Opportunity Commission, alleging a violation of the ADA. A true and accurate copy of the Charge is attached hereto as Exhibit B.

43.   On July 27, 2016, the United States Department of Justice issued a Right to Sue Letter which was received by Plaintiff's counsel on August 1, 2016. A true and accurate copy of the Right to Sue Letter is attached hereto as Exhibit C.

### FIRST CLAIM FOR RELIEF

### (ADA--Unlawful Failure to Provide a Reasonable Accommodation)

44.   Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45.   Plaintiff with a history of back pain and a diagnosis of spinal stenosis received in the summer of 2015 is a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment."

46.   Plaintiff's impairment limited a major life activity and the limitation was substantial.

47. Plaintiff could perform the essential functions of her position with reasonable accommodation, such as assistance with lifting.

48. Defendant BOCES is an employer that had notice of Plaintiff's disability.

49. BOCES's failure to provide Plaintiff with a reasonable accommodation to her known disabilities constitutes an unlawful constitutes an unlawful discriminatory practice.

50. BOCES violated the Americans with Disabilities Act by failing to provide reasonable accommodations for Plaintiff's disability and by failing to engage interactively in the reasonable accommodation process.

51. As a direct and proximate result of Defendants' unlawful failure to reasonably accommodate Plaintiff, Plaintiff sustained injuries and damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant BOCES providing the following relief:

a. Compensatory damages in an amount to be determined at trial, including emotional distress damages, loss of health benefits and retirement income;

b. Punitive damages in an amount to be determined at trial;

c. Alternatively, an order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

d. An award of interest, costs, and reasonable attorneys' fees;

e. Any and all remedies provided pursuant to the Americans with Disabilities Act.

f. Such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Retaliation under ADA)

52.   Plaintiff repeats and realleges paragraphs 1 through 51 as if fully set forth herein.

53.   After seeking treatment for spinal stenosis, Plaintiff engaged in conduct protected under the ADA when she requested an accommodation for her disability.

54.   Plaintiff was subjected to adverse employment actions by BOCES soon after requesting an accommodation. Despite earlier positive evaluations, Plaintiff received two negative evaluations and was terminated on November 15, 2015 shortly thereafter.

55.   The actions taken by BOCES in terminating Plaintiff, after considering Plaintiff's request for an accommodation, constituted retaliation under the ADA.

56.   Plaintiff's protected activity in requesting an accommodation was a but for cause of the adverse employment actions taken by BOCES.

57.   As a consequence of the actions taken by BOCES and BOCES personnel, Plaintiff was retaliated against and sustained injury and damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant BOCES providing the following relief:

a.   Compensatory damages in an amount to be determined at trial, including emotional distress damages, loss of health benefits and retirement income;

b.   Punitive damages in an amount to be determined at trial;

c.   Alternatively, an order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

d.   An award of interest, costs, and reasonable attorneys' fees;

e.   Any and all remedies provided pursuant to the Americans with Disability Act.

9

f.   Such other and further relief as the Court deems right and appropriate

## THIRD CLAIM FOR RELIEF

### (NYSHRL—Unlawful Discharge)

58.   Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.   Plaintiff, having an actual impairment, spinal stenosis and a history of back problems, that prevents the exercise of normal bodily function and is a medically diagnosable disability, was unlawfully discharged by for her impairments and disability.

60.   Plaintiff is qualified for her job as an Occupational Therapist and is able to satisfactorily perform the "essential functions" of the job with or without reasonable accommodation.

61.   As a consequence of the actions taken by BOCES, Plaintiff was unlawfully discharged in violation of the NYSHRL.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against all Defendants providing the following relief:

a.  Compensatory damages in an amount to be determined at trial, including emotional distress damages, loss of health benefits and retirement income;

b.  Punitive damages in an amount to be determined at trial;

c.  Alternatively, an order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

d.   An award of interest, costs, and reasonable attorneys' fees;

e.   Any and all remedies provided pursuant to the New York State Human Rights Law.

f.  Such other and further relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (NYSHRL—Retaliation)

62.    Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63.    Plaintiff herein participated in a protected activity known to the Defendants when she requested an accommodation for her disability.

64.    A number of employment actions disadvantaged the plaintiff and a causal connection between the protected activity and the adverse employment action amounted to retaliation against Plaintiff. An adverse employment action "need not affect the terms and conditions of a Plaintiff's employment for purposes of a claim of retaliation.

65.    As a result of the actions taken against Plaintiff, Plaintiff was injured and sustained damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against all Defendants providing the following relief:

a.   Compensatory damages in an amount to be determined at trial, including emotional distress damages, loss of health benefits and retirement income;

b.   Punitive damages in an amount to be determined at trial;

c.   Alternatively, an order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

d.   An award of interest, costs, and reasonable attorneys' fees;

e.   Any and all remedies provided pursuant to the New York State Human Rights Law.

f.   Such other and further relief as the Court deems just and proper

## FIFTH CLAIM FOR RELIEF

### (NYSHRL—Aider and Abettor Liability)

66. Plaintiff repeats and realleges paragraphs 1 through 65 as though set forth herein.

67. NYSHRL prohibits disability discrimination law that is aided and abetted by individuals.

68. Principal Heller and Supervisor Weisel aided and abetted BOCES's discrimination of Plaintiff by refusing to accommodate Plaintiff's disability in violation of Section 296(6) of the NYSHRL and committing adverse actions against Plaintiff by negatively evaluating her in order to terminate her.

69. As a proximate result of Heller's and Weisel's actions, Plaintiff has suffered and continues to suffer a substantial loss of employment benefits, including health benefits and retirement benefits, emotional distress damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against all Defendants providing the following relief:

a. Compensatory damages in an amount to be determined at trial, including emotional distress damages, loss of health benefits and loss of retirement income;

b. Punitive damages in an amount to be determined at trial;

c. Alternatively, an order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

d. An award of interest, costs, and reasonable attorneys' fees;

e. Any and all remedies provided pursuant to the New York State Human Rights Law.

f.   Such other and further relief as the Court deems just and proper.

Further, Plaintiff demands trial by jury.

Dated: Bronx, New York
        September 28, 2016

Respectfully submitted,

THE LAW OFFICE OF MINDY KALLUS
*Attorneys for Plaintiff*
3220 Netherland Avenue, Suite 5D
Bronx, New York 10463
Tel.: (646) 470-0819

By: _____
        MINDY KALLUS (MK 0960)

## VERIFICATION

STATE OF NEW YORK )

                   : ss.

NASSAU COUNTY )

DIANE PERITZ, being duly sworn, deposes and says that she is the Plaintiff in the within Complaint, that she has read the foregoing Complaint, and knows the contents thereof, and the same is true to her own knowledge, except as to those matters stated to be on information and belief, and that as to those matters she believes them to be true.

DIANE PERITZ

Sworn to before me this
September 28 2016

Notary Public

GLEN CARBALLO
Notary Public - State of New York
NO. 01CA6321071
Qualified in Suffolk County
My Commission Expires Mar 16, 2019

# EXHIBIT A

```
------------------------------------------------------------------------------------X
```

In the Matter of the Claim of

DIANE PERITZ,

     Claimant,

 -against-

BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY,
BONNIE HELLER, Principal of Nassau BOCES Rosemary Kennedy School,
JANET WEISEL, Supervisor of Occupational Therapists,
     Respondents.

```
------------------------------------------------------------------------------------X
```

## NOTICE OF CLAIM

TO: SECRETARY OF STATE
  BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY
  (Nassau BOCES), 71 Clinton Road, Garden City, New York
  PRINCIPAL BONNIE HELLER, Rosemary Kennedy School, 2850 N. Jerusalem Road,
  Wantagh, New York 11793
  JANET WEISEL, 2860 North Jerusalem Road, Wantagh, New York 11793

   PLEASE TAKE NOTICE that Claimant Diane Peritz, residing at 112 Holiday Drive

Woodbury, New York, 11797, does hereby make claim against Respondents, Nassau BOCES,

Bonnie Heller and Janet Weisel, for the sum of One Million Dollars ($1,000,000.00). The instant

Notice of Claim is timely brought as it is brought within ninety days of November 5, 2015, the

date Claimant was terminated. In support of such claim, Diane Peritz states the following:

## PARTIES

1. Claimant, Diane Peritz, is an experienced Occupational Therapist with 16 years of experience.

2. Respondent, Nassau BOCES, was Claimant's employer as that term is defined in Executive

  Law § 290. Nassau BOCES is an educational organization that provides teaching services and

  therapies to special needs children.

3. Respondent Bonnie Heller is and was the principal of the Nassau BOCES Rosemary Kennedy School, lower division.

4. Respondent Janet Weisel is the BOCES Supervisor of Occupational Therapists.

**STATUTES VIOLATED**

5. The laws violated by Respondents include, inter alia, New York State Human Rights Law §§ 290 et seq., 292(1), 292(5), 292.21-e. Respondents failed to accommodate Claimant which would have permitted Claimant, who had a disability, to perform the functions of her job in a reasonable manner. Although Ms. Weisel repeatedly advised Claimant that she would be accommodated, Respondents failed to accommodate Claimant and instead terminated her on November 5, 2015. Prior to suffering from spinal stenosis, Respondents treated Ms. Peritz as a respected occupational therapist until her back condition. After her back condition Respondents took retaliatory actions which led up to the decision not to grant Ms. Peritz tenure and to terminate her. Respondents' actions were also discriminatory because virtually all non-disabled therapists received tenure.

**STATEMENT OF FACTS**

6. Ms. Peritz was hired as a part-time employee in the field of occupational therapy in March of 2015. When she was offered the position by Janet Weisel, there was much discussion about the permanency of the position offered to her because she was being forced by the Civil Service deadlines created by BOCES and the timeline imposed by Weisel to leave her prior position in New York City. Ms. Peritz's New York City position was a permanent position that Ms. Peritz had held for several years and which was extremely fulfilling except for a very long commute of more than two hours. The commute for the new position was twenty minutes long.

2

7. In April of 2015, Ms. Weisel asked Ms. Peritz to become full time because Ms. Weisel stated to Ms. Peritz that Ms. Peritz was doing a wonderful job. Prior to accepting the position, Ms. Peritz asked Ms. Weisel whether the position was permanent because she was then working as a part-time therapist for the City of New York.

8. Ms. Weisel assured Claimant that the Nassau BOCES position would be permanent because occupational therapists and physical therapists received tenure nearly automatically.

9. On accepting the offer of a full-time position, Ms. Peritz was placed in two schools—CCA and the Jerusalem Avenue School.

10. Ms. Peritz was first observed by Ms. Weisel in May of 2015 at CCA. She was informed thereafter that she would be observed twice more prior to receiving tenure in the early fall.

11. Despite Ms. Peritz requesting dates for the two observations, Ms. Weisel failed to schedule observations but she promised that this would not interfere with receiving tenure.

12. Indeed, Ms. Peritz's annual evaluation was very good and she was asked to work the summer session, which would not have happened if she were not doing well.

13. The evaluation was signed by Ms. Weisel as well as by one of the school principals.

14. While working in the summer session, Ms. Peritz woke up on August 11, 2015 in great pain.

15. She was unable to go to work that day and immediately went to see Dr. Beer of Long Island Spine. He ordered an epidural and MRIs.

16. When the condition worsened, Ms. Peritz apoke to Assistant Principal Barrett and volunteered to come to school in a wheel chair in order to finish her summer paperwork.

17. Although Barrett agreed, Ms. Weisel advised her that she would not be permitted to come to the school but that Ms. Weisel would complete the paperwork.

3

18. Ms. Weisel subsequently commended Ms. Peritz for her organizational skills which made the task easier.

19. Ms. Peritz spent the rest of the summer resting and getting treatment for her back, which her doctor had diagnosed as spinal stenosis. Her doctor advised her that her condition would improve.

20. At the end of the summer Ms. Peritz was notified by mail that she would be placed in the fall with the CCA (which expressly asked her back) and with the Rosemary Kennedy School.

21. During the week before the school year started, Ms. Peritz called Ms. Weisel to discuss her back condition and weakness that was now improving. Ms. Peritz suggested taking off until she was stronger. Ms. Weisel asked instead for a doctor's letter seeking an accommodation for her disability.

22. Ms. Peritz's doctor prepared a letter on August 31, 2015 requesting an accommodation for Ms. Peritz.

23. A meeting regarding the accomodation was scheduled for September 11, 2015.

24. The meeting was run by Selma Shelton of BOCES with the principals on the phone. Ms. Weisel and Carmine Scerra were also at the meeting. A follow up email summarized the plan which was agreed to by the CCA principal, Chris Korolczuk and by John Picarello, a principal of the Rosemary Kennedy School.

25. The accommodation was agreed to and Ms. Peritz was assured that the accommodation would be implemented. The accomodation involved the use of aides to assist with lifting. No one advised Ms. Peritz that anything else needed to be done.

26. Indeed, Ms. Weisel assured Ms. Peritz that the accommodation would be implemented and she should not be concerned.

4

27. Ms. Weisel disregarded the terms of the accommodation and did not abide by the plan.

28. On Oct 2 Ms. Peritz was given at letter in the office of the Rosemary Kennedy School signed by Principal Bonnie Heller stating they she wanted to have a disciplinary meeting. Ms. Peritz had never met Ms. Heller before.

29. Bob Dreaper, Ms. Peritz's union representative was present at the meeting. It became clear that a paraprofessional in one of the sessions had complained about Ms. Peritz. The paraprofessional had not been made aware of Ms. Peritz's disability or of the accommodation. Parties at the meeting also discussed an earlier observation of Ms. Peritz involving a somnolent student who did not know Ms. Peritz. Ms. Peritz was informed that she should get Dr. Beer to update his request for an accommodation, which she did on Oct 11.

30. A phone conference was subsequently held regarding the updated accommodation and was agreed to and the parties agreed that the plan would be implemented.

31. Nevertheless, the letter summarizing the meeting appeared biased and the union rep agreed that Ms. Peritz should write a response which she did.

32. There is no question that Ms. Peritz is skilled at working with the population at the Rosemary Kennedy School, having worked with such students in home care for more than 10 years.

33. On October 2, 2015, Bonnie Heller apparently rejected the accommodation even though she had never spoken to Ms. Peritz and was unaware of the meetings held and the medical letters.

34. A meeting was subsequently held on October 20, 2015. Ms. Peritz was no longer permitted to work but was paid until the fifth of November. Ms Weisel claimed in an evaluation that Ms. Peritz's work was not satisfactory. Ms. Weisel and Principal Heller did not inform the CCA of the action they took.

35. Ms. Peritz was terminated as of November 5, 2015.  She did not receive 30 days' notice as required by the contract because if she had been employed past November 5, she would have to be granted tenure.

## DAMAGES

36. Ms. Peritz suffered, inter alia, multiple damages, the monthly pay she would have received had she been granted tenure, health benefits that she would have received while employed by Nassau BOCES, and health and retirement benefits that she would have received, upon retirement.  Ms. Peritz also sustained distress damages.

WHEREFORE, Claimant requests that her claim be allowed and paid in the amount of $1,000,000.00.

By: Mindy Kallus
Law Office of Mindy Kallus
3220 Netherland Avenue, 5D
Bronx, New York 10463
(646)470-0819
Kallusesq@gmail.com
Attorneys for Claimant

6

## **VERIFICATION**

STATE OF NEW YORK)

**NASSAU COUNTY** )

**DIANE PERITZ**, being duly sworn, deposes and says that she is the claimant in the within Notice of Claim, that she has read the foregoing Notice of Claim, and knows the contents thereof, and the same is true to her own knowledge, except as to those matters stated to be on information and belief, and that as to those matters she believes them to be true.

DIANE PERITZ

Sworn to before me this 3 / 31
day of January, 2016

Notary Public

```
DENNIS FLEMING
Notary Public - State of New York
NO. 01FL6177504
Qualified in Nassau County
My Commission Expires  11-13-19
```

EXHIBIT B

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

_____ and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Diane Peritz** | 516-921-8145. | ▓▓▓1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| **112 Holiday Drive, Woodbury, New York 11797** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY** | **More than 15** | **516-396-2500** |

| Street Address | City, State and ZIP Code |
|---|---|
| **71 Clinton Road, Garden City, New York  11530** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **8/11/2015**   Latest **11/5/2015**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**INTRODUCTION**: Diane Peritz, is a seasoned Occupational Therapist with 16 years of experience. Nassau County BOCES was Ms. Peritz's employer until November 5, 2015. Nassau County BOCES is an educational organization that provides teaching services and therapies to special needs children. Bonnie Heller is and was the principal of the Nassau County BOCES Rosemary Kennedy School, lower division. Janet Weisel is the BOCES Supervisor of Occupational Therapists. The witnesses to many of the events described below were Principal Bonnie Heller, Supervisor Janet Weisel, and Ms. Peritz. In August of 2015, while employed by Nassau County BOCES, Ms. Peritz sustained a disability, severe spinal stenosis, which is a physical impairment that interfered with a major life activity, specifically, lifting, as defined in 42 U.S.C. § 12102 of the ADA.

In failing to accommodate Ms. Peritz's disability and terminating her thereafter because of her disability, Nassau County BOCES violated the Americans with Disabilities Act ("ADA"), as amended by the ADA amendments of 2008 (42 U.S.C. §§ 12101-12213). Nassau County BOCES failed to accommodate Claimant as required by the ADA. Although Ms. Peritz was repeatedly advised that she would be accommodated, she was not accommodated. Instead she was terminated on November 5, 2015.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. N/A | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT  *See last page* |

| | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
|---|---|---|
| *Date* | *Charging Party Signature* | |

EEOC Form 5 (11/09)

| # CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |
| | | and EEOC |
| | *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**FACTS:** Ms. Peritz was hired as a part-time employee in the field of occupational therapy in March of 2015. When she was offered the position by Janet Weisel, there was much discussion about the permanency of the position offered to her because she was being forced by the Civil Service deadlines created by BOCES and the timeline imposed by Weisel to leave her prior position in New York City. Ms. Peritz's New York City position was a permanent position that Ms. Peritz had held for several years and which was extremely fulfilling except for a very long commute of more than two hours. The commute for the new position was twenty minutes long.

In April of 2015, Ms. Weisel asked Ms. Peritz to become full time because Ms. Weisel stated to Ms. Peritz that Ms. Peritz was doing a wonderful job. Prior to accepting the position, Ms. Peritz asked Ms. Weisel whether the position was permanent because she was then working as a part-time therapist for the City of New York.

Ms. Weisel assured Ms. Peritz that the Nassau BOCES position would be permanent because occupational therapists and physical therapists received tenure nearly automatically. On accepting the offer of a full-time position, Ms. Peritz was placed in two schools—CCA and the Jerusalem Avenue School.

Ms. Peritz was first observed by Ms. Weisel in May of 2015 at CCA. She was informed thereafter that she would be observed twice more prior to receiving tenure in the early fall. Despite Ms. Peritz requesting dates for the two observations, Ms. Weisel failed to schedule observations but she promised that this would not interfere with receiving tenure.

Indeed, Ms. Peritz's annual evaluation was very good and she was asked to work the summer session, which would not have happened if she were not doing well. The evaluation was signed by Ms. Weisel as well as by one of the school principals.

While working in the summer session, Ms. Peritz woke up on August 11, 2015 in great pain. She was unable to go to work that day and immediately went to see Dr. Beer of Long Island Spine. He ordered an epidural and MRIs. When the condition worsened, Ms. Peritz spoke to Assistant Principal Barrett and volunteered to come to school in a wheel chair in order to finish her summer paperwork.

Although Barrett agreed, Ms. Weisel advised Ms. Peritz that she would not be permitted to come to the school but that Ms. Weisel would complete the paperwork. Ms. Weisel subsequently commended Ms. Peritz for her organizational skills which made the task easier.

CONTINUED ON NEXT PAGE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

State or local Agency, if any                                    and EEOC

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

## CONTINUED FROM PREVIOUS PAGE

Ms. Peritz spent the rest of the summer after sustaining the disability resting and getting treatment for her back, which her doctor had diagnosed as spinal stenosis. Her doctor advised her that her condition would improve but that there could be flare-ups. At the end of the summer Ms. Peritz was notified by mail that she would be placed in the fall with the CCA (which expressly asked her back) and with the Rosemary Kennedy School. During the week before the school year started, Ms. Peritz called Ms. Weisel to discuss her back condition and weakness that was now improving. Ms. Peritz suggested taking off for a week or so until she was stronger. Ms. Weisel asked instead for a doctor's letter seeking an accommodation for the disability. Ms. Peritz's doctor prepared a letter on August 31, 2015 requesting an accommodation for Ms. Peritz. A meeting regarding the accommodation was scheduled for September 11, 2015. The meeting was run by Selma Shelton of BOCES with the principals on the phone. Ms. Weisel and Carmine Scerra were also at the meeting. A follow up email summarized the plan which was agreed to by the CCA principal, Chris Korolczuk and by John Picarello, a principal of the Rosemary Kennedy School. The accommodation was agreed to and Ms. Peritz was assured that the accommodation would be implemented. The accommodation involved the use of aides to assist with lifting. No one advised Ms. Peritz that anything else needed to be done. Indeed, Ms. Weisel assured Ms. Peritz that the accommodation would be implemented and she should not be concerned.

Ms. Weisel disregarded the terms of the accommodation and did not abide by the plan. On Oct 2, 2015 Ms. Peritz was given a letter in the office of the Rosemary Kennedy School signed by Principal Bonnie Heller stating they she wanted to have a disciplinary meeting. Ms. Peritz had never met Ms. Heller before. Bob Dreaper, Ms. Peritz's union representative was present at the meeting. It became clear that a paraprofessional in one of the sessions had complained about Ms. Peritz. The paraprofessional had not been made aware of Ms. Peritz's disability or of the accommodation. Parties at the meeting also discussed an earlier observation of Ms. Peritz involving a somnolent student who did not know Ms. Peritz. Ms. Peritz was informed that she should get Dr. Beer to update his request for an accommodation, which she did on Oct 11, 2015.

A phone conference was subsequently held regarding the updated accommodation and the parties agreed that the plan would be implemented. Nevertheless, the letter summarizing the meeting appeared biased and the union rep agreed that Ms. Peritz should write a response which she did. There is no question that Ms. Peritz was skilled at working with the population at the Rosemary Kennedy School, having worked with such students in home care for more than 10 years. On October 2, 2015, Bonnie Heller rejected the accommodation even though she had never spoken to Ms. Peritz and was unaware of the meetings held and the medical letters provided. A meeting was subsequently held on October 20, 2015. Ms. Peritz was no longer permitted to work but was paid until the fifth of November. Ms Weisel claimed in an evaluation that Ms. Peritz's work was not satisfactory. Ms. Weisel and Principal Heller did not inform the CCA of the action they took. Ms. Peritz was terminated as of November 5, 2015.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.  *N/A*

I declare under penalty of perjury that the above is true and correct.

4/21/19     x [signature]

Date       Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

X [signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 04/21/2016

CATHERINE DORO
Notary Public - State of New York
NO. 01DO6275198
Qualified in Nassau County
My Commission Expires

EXHIBIT C



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7010 0290 0000 2017 5891

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

July 27, 2016

Ms. Diane Peritz
c/o Mindy Kallus, Esquire
Law Office of Mindy Kallus
3220 Netherland Avenue, 5D
Bronx, NY 10463

Re: EEOC Charge Against Board of Cooperative Educational Services of Nassau County
No. 520201601839

Dear Ms. Peritz:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
Board of Cooperative Educational Services of Nassau County