COPY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------x

DIANE PERITZ,

Plaintiff,

- against -

NASSAU COUNTY BOARD OF COOPERATIVE EDUCATIONAL SERVICES, BONNIE HELLER, and JANET WEISEL,

Defendants.

CV No.: 16-CV-05478(SJF)(AYS)

---------------------------------------------x

100 Supreme Court Drive
Mineola, New York

July 11, 2017
10:10 a.m.

Deposition of one of the Defendants, by BONNIE HELLER, pursuant to Notice, before Florence Syskrot, a Notary Public of the State of New York.

SANDY SAUNDERS REPORTING
254 South Main Street, Suite 216
New City, New York 10956
(845) 634-7561

A P P E A R A N C E S:

LAW OFFICE OF MINDY KALLUS
Attorneys for Plaintiff
3220 Netherland Avenue, Suite 5D
Bronx, New York 10463
BY: MINDY KALLUS, ESQ.

SILVERMAN & ASSOCIATES
Attorneys for Defendants
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
BY: CAROLINE B. LINEEN, ESQ.

ALSO PRESENT:

DIANE PERITZ

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between (among) counsel for the respective parties herein, that filing and sealing and certification of the within deposition be waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be sworn to and signed before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

- oOo -

B O N N I E H E L L E R, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MS. KALLUS:

Q. Please state your full name for the record.

A. Bonnie Heller.

Q. What is your address?

A. Nassau BOCES, 2850 N. Jerusalem Road, Wantagh, New York 11795.

Q. Good morning, Miss Heller.

A. Good morning.

Q. My name is Mindy Kallus. I am an attorney for Diane Peritz, the Plaintiff in this lawsuit.

I'm going to be asking you some questions during the course of this morning.

Before we start, I just want to go over a few instructions.

The first is: Please don't speak over me when I ask a question.

You may feel that you know the

answer right away. Just wait until I finish the question before you start your answer.

If you don't understand any question that I pose to you, please let me know. I will clarify it for you.

Have you taken any medications that would prevent you from testifying truthfully this morning?

A. No.

Q. Could you state your formal name for the record?

A. Bonnie Lee Heller.

Q. Can you describe what your current position is?

A. I'm a School Principal at the Rosemary Kennedy School.

Q. Do you have any other degrees related to your work as a School Principal?

A. Any?

Q. Any educational degrees.

A. Any at all?

Q. Yes.

A. I have a dual certification in Special Ed and Elementary Ed. And I have a

School District and School Building certification.

Q. Getting back to your education, did you graduate from high school?

A. Yes.

Q. Following high school, did you attend college?

A. Yes.

Q. Did you graduate from college?

A. Yes.

Q. What degree do you have?

A. Biology and Environmental Science from -- a four-year degree.

And I went back for my Master's in Education.

Q. Do you have one Master's?

A. I have one Master's that is a dual certification.

Q. In your role as Principal and given the degrees that you have, are you familiar with how Occupational Therapists perform their work?

MS. LINEEN: Objection to the form.

Heller

You can answer, if you can.

Q. It doesn't mean that you shouldn't answer. Her instructions are not that you shouldn't answer.

A. Okay. Could you repeat the question?

Q. Are you familiar with how Occupational Therapists perform their work?

MS. LINEEN: Maintain the objection.

To the extent that you can answer, go ahead.

A. I'm familiar with what that -- what that looks like as part of a classroom team. But not -- I'm not an OT, so --

Q. Do you, as part of your position as Principal, observe Occupational Therapists doing their work at your school?

MS. LINEEN: Object to the form.

You can answer.

A. Not formally.

Q. In other words, are you saying that you don't actually perform observations of Occupational Therapists?

A. Not formal observations, no.

Q. You are suggesting, as you just testified, that you don't do formal observations, but you may do informal observations?

MS. LINEEN: Objection to form.

You may answer.

A. I may just see them working with students when I'm in and out of classrooms, around the building, and so on.

Q. Are you in a position to determine whether or not an Occupational Therapist is doing a satisfactory job?

MS. LINEEN: Object to the form.

If you can answer, go ahead.

A. I'm not sure what you mean.

MS. KALLUS: Can you repeat the question that I just posed. Thank you.

(Requested portion of the record was read by the Reporter.)

MS. LINEEN: My objection continues.

But if you can answer, go ahead.

A. I can't really answer that

Heller

question. It is not -- I don't evaluate OTs.

Q. If you don't evaluate OTs, are you in any position to determine whether an OT should become permanent? Is that part of what you do as a Principal?

A. No.

Q. Who does that? Who determines that?

A. The Board makes the final determination.

Q. The BOCES Board makes the final determination?

A. Um hum.

MS. LINEEN: Is that a yes?

THE WITNESS: Yes. I'm sorry.

Q. Is anyone on the Board an Occupational Therapist?

MS. LINEEN: At this time?

MS. KALLUS: At the time that she just referenced when she said that the Board makes the final determination.

A. I don't know all of their backgrounds.

MS. LINEEN: For the record, the

Board changes.

Q. At the time that Miss Peritz was a probationary employee, did the Board make a determination about her performance?

MS. LINEEN: I'm going to object to the form.

You can answer.

A. They make a determination based on input from the OT Supervisor.

Q. Who was the OT Supervisor at the time that Miss Peritz was a probationary employee?

A. Janet Weisel. And Lorraine is a PT -- actually, Janet Weisel.

Q. Did Janet Weisel prepare a report for a BOCES Board in connection with Miss Peritz?

A. I don't know. I don't know.

Q. Were you involved at all in the determination to terminate Diane Peritz's employment as a probationary employee?

A. No, I'm not involved in that.

Q. Did you speak to Janet Weisel about the determination to terminate Miss

Peritz's position?

MS. LINEEN: At any time?

A. Yes.

MS. KALLUS: While Miss Peritz was employed as a probationary employee.

MS. LINEEN: While she was still there, did you speak to Janet Weisel about --

MS. KALLUS: You don't have to ask my question for me.

MS. LINEEN: I'm not asking the question for you.

I'm relaying your question to clarify it, because your question is confusing about what time you are speaking about.

The witness has a right to understand.

MS. KALLUS: She can ask me if she doesn't understand.

A. Yes, I spoke with Janet.

Q. What was the conversation? What was the conversation about when you spoke to Janet with respect to Miss Peritz?

Heller

A. She asked me to sit in when she reviewed the observation information with Miss Peritz.

Q. Was this a post-observation discussion?

A. Um hum.

MS. LINEEN: Let her get her question out.

A. Yes. Sorry.

Q. What did Ms. Weisel tell you her concerns were, or what was the purpose of the post-observation discussion?

MS. LINEEN: Objection to form.

You can answer.

A. She was -- she was going to review the post-observation document.

Q. Do you recall which student was involved in the observation?

A. No.

Q. Was this the first time that you had a conversation with Janet Weisel about Miss Peritz?

A. I don't recall.

Q. Do you recall having any

conversations with Miss Weisel about Miss Peritz in the spring of 2015?

A. No.

Q. As you sit here today, do you recall when you first had a conversation with Miss Weisel about Miss Peritz?

A. In October of 2015.

Q. At that time were you aware that Miss Peritz had a disability?

MS. LINEEN: Note my objection to form.

You can answer.

A. I was aware that she had an accommodation.

Q. In October of 2015 you were aware that she had an accommodation?

A. Yes.

Q. When was the first time you became aware of the fact that Miss Peritz had an accommodation?

A. In September.

Q. How did you come to find out that there was an accommodation in September?

A. The Co-Principal that I worked

with at the time had sat in on the accommodation meeting. And he informed me.

Q. Who was the Co-Principal?

A. John Picarello, P-I-C-A-R-E-L-L-O.

Q. I'm sorry. You testified earlier that your first conversation with Miss Weisel about Miss Peritz was in October of 2015?

A. Yes.

Q. Before that date were you aware of any concerns that Miss Weisel had with respect to Miss Peritz?

A. Not that I recall.

Q. Did you know Miss Peritz before she was employed by BOCES, Nassau BOCES?

A. No.

Q. The first time -- when Diane Peritz joined BOCES, did you review her CV?

A. Her resume?

Q. Yes.

A. No.

Q. Did you take part in any way in the hiring of Miss Peritz?

A. No.

Q. When you first spoke to Miss Weisel in October of 2015 about Miss Peritz, what conversations did you have? What did you talk about?

A. She reviewed the observation that she had conducted and that she had some concerns. And she had written up her post-observation report. And she wanted me to be present when she reviewed it with Miss Peritz.

Q. Where did the conversation take place, the post observation take place? I'm sorry.

A. In my office.

Q. Did Miss Weisel tell Miss Peritz that the meeting in your office would take place with you present?

A. I don't know.

Q. At the time that Miss Weisel in October of 2015 expressed concerns about Miss Peritz, did you review any of the evaluations that had taken place?

MS. LINEEN: Note my objection to form.

You can answer.

A. I'm not sure I understand.

Q. There were evaluations of Miss Peritz as part of her -- that's part of how she was observed and reviewed at Nassau County BOCES.

Did you review any of the evaluation reports involving Miss Peritz?

A. No.

You mean prior to that meeting?

Q. Yes.

A. Others before that, no.

Q. After that meeting did you review any evaluation reports?

A. No.

Q. I am going to show you a number of documents that were previously admitted as exhibits in this case. I'm just going to ask you a few questions about them.

MS. LINEEN: Do you want the ones that are marked?

MS. KALLUS: If you have them, yes.

MS. LINEEN: Which?

MS. KALLUS: Exhibit A.

MS. LINEEN: (Handing.)

Q. Just review that document. I'm going to have a question or two for you.

MS. LINEEN: Just wait for a question.

A. (Perusing.)

Q. Just let me know when you are finished reading it.

A. I'm finished.

Q. Prior to today, have you ever seen this Classified Employee Evaluation Report that is dated June 2015?

A. For Diane?

Q. Yes.

A. No.

Q. Did you know that prior to October of 2015 Diane had received satisfactory evaluations?

MS. LINEEN: At BOCES?

MS. KALLUS: At BOCES.

A. At BOCES.

MS. LINEEN: Objection.

You can answer.

Heller

A. I don't know that I had been told that. So I don't -- I don't recall.

Q. Now, again -- that is all I have for Exhibit A.

MS. LINEEN: Do you need a document?

MS. KALLUS: Yes. Exhibit B.

MS. LINEEN: Exhibit B?

MS. KALLUS: Yes.

MS. LINEEN: (Handing.)

Q. If you could look at it for a minute or two?

MS. LINEEN: Wait for a question. Just look at it.

A. (Perusing.) I'm sorry. I was just reading through it.

MS. LINEEN: That is okay.

All set?

THE WITNESS: Yes.

MS. LINEEN: If you need to read ahead or go back, go ahead and do that.

THE WITNESS: Thank you.

Q. Before today have you ever seen this?

A. No. I'm sorry.

Q. Have you seen this Classified Employer Evaluation Report?

A. No.

Q. Did you ever discuss the contents of this report with Miss Weisel?

A. Yes.

Just the parts that -- well, a lot of it went along with the observation report when I sat in with her, the post observation.

Q. Is it typical for you to sit in on post-observation reports of Occupational Therapists?

MS. LINEEN: Note my objection to form.

A. Not typical, but it does occur.

Q. Just going back in time for a minute. What documents did you review in preparation for this deposition today?

A. I reviewed the letter that was sent to Miss Peritz.

After our meeting together, we had a disciplinary meeting where other

administrators were present.

I reviewed the letter that Miss Peritz wrote back to me.

I had a couple of notes from staff members expressing a concern.

I reviewed e-mails that talked -- that reviewed the accommodations based on the two different accommodation meetings.

Q. You mentioned that you reviewed notes about a staff member who expressed concerns.

Do you know what that concern was?

A. That when Miss Peritz came into the classroom, she did not attempt to engage the student, that student that she was taking out for therapy. Refused to touch them. Didn't want to hold their hand, and didn't interact with them, and didn't establish a rapport, and appeared fearful.

Q. You testified earlier that Miss Peritz had an accommodation that involved her upper body, is that right, or did you know --

MS. KALLUS: Strike that.

Q. Do you know what the accommodation was that Miss Peritz had? Do you know what it was?

A. Yes.

Q. What was that accommodation?

A. The first one from the September 11th meeting was that she couldn't lift more than ten pounds.

Q. Is that the only one that you are aware of?

A. No.

There was a second meeting in early October. And a second doctor's note discussed the need for her not to be pulled by a student, you know.

Q. In other words, a student shouldn't pull her?

A. Right.

Q. Now, you just mentioned that the criticisms of Miss Peritz involved refusing to touch students; is that right? Is that true?

MS. LINEEN: Note my objection to form.

Is it true that she just

testified that way? Is that --

Q. Is it true that you just testified, yes, that Miss Peritz refused to touch students?

MS. LINEEN: Note my objection.

You can answer.

A. Yes.

Q. And that she appeared fearful around the students, that is the second issue that you testified to?

MS. LINEEN: Objection.

You can answer.

A. Yes.

Q. And that she wouldn't touch them, is that the third item that you described as one of the issues that Miss Peritz had?

A. Yes.

MS. LINEEN: Objection to form.

You can answer.

Q. Considering what you just testified to, the three items that were concerns that were had with respect to Miss Peritz, they -- just looking at them fresh for the first time right now, let's just consider

them for the first time, don't they appear to be related to her issues relating to the accommodations and her spinal stenosis? That she didn't want to touch the students so that they wouldn't pull her and if -- and if she appeared fearful, it might be because she had a very serious back condition that was causing her to be somewhat leery about touching?

MS. LINEEN: Is that the end of your question?

Q. If I didn't already mention it, that she refused -- you indicated that she refused to touch students; is that right? You indicated all these three items. My question is: Don't they seem related to her accommodation?

MS. LINEEN: Objection to form, the hypothetical nature of the characterization and, to the extent you are calling for a legal conclusion.

You can answer the question.

MS. KALLUS: I'm not calling for a legal conclusion.

Q. The three items that you

testified to that were concerns that were expressed by the Board, or the school, or Janet Weisel, all appear to be related to her back problems.

MS. LINEEN: I'm going to direct her not to answer because she didn't testify that way.

MS. KALLUS: She testified that these were three items that were issues of concern with respect to Miss Peritz.

MS. LINEEN: Raised by a staff member, not the Board, not whoever.

If you are going to characterize her testimony, get it right before she answers the question.

Q. Really, my sole question is: Don't these three items seem to be related to a back problem as opposed to an emotional issue relating to the children?

MS. LINEEN: I'm going to object to the form --

MS. KALLUS: You can object.

MS. LINEEN: -- and to the extent she is not here to testify as an expert

as it relates to whether these are related to the back condition.

You can answer the question, if you can.

A. No.

Q. They don't seem to be related to her back problem?

MS. LINEEN: Asked and answered.

You can answer again.

Q. You can say no again if you want to.

A. No.

MS. KALLUS: This might be a good time for a quick break.

Let's take a break.

(At this time a recess was taken.)

Q. We spoke earlier about your degrees and your positions. But we didn't -- I didn't ask you questions about your actual education, where you went to college, for example.

A. Undergraduate, Geneseo.

And then Adelphi for my Master's

in Education.

And then the College of New Rochelle for School Administration.

Q. Do you have any degrees in supervision?

MS. LINEEN: Degree?

Q. A degree in supervision?

A. I have a -- yes.

Q. Did your education flow? Did you immediately go from college to graduate school? Or did you teach or do other kinds of work in between?

A. I worked in a State institution with adults with special needs.

Q. When was that?

A. After college. Immediately after -- after college, after my undergraduate degree.

Q. What did you do after that?

A. After that, well, that was in Boston.

Then I moved back to Long Island for family reasons, and worked in a few different places, including residential

programs for kids with special needs.

And then I went back for my Master's in Education.

And then while I was doing my Master's, I was working at St. Christopher Ottilie.

Q. What is that?

A. It is a home for students with developmental disabilities, including autism and other, you know, physical needs and behavioral.

Q. Then what did you do after that?

A. I finished my Master's. And I got a job in Birch, which is Birch Services in Queens. I was a Pre-School Teacher.

Q. And after that?

A. I came to BOCES in 1989.

Q. When you first began working at BOCES, what did you do?

A. I was a Classroom Teacher.

And I worked at that time -- the school went from pre-school through high school. And I worked in all different departments as a Teacher.

Heller

Q. Did you get promoted? What happened after?

MS. LINEEN: Objection to form.

You can answer.

A. Yes.

While I was teaching, I completed my certificate in School Administration, and received a promotion to an Assistant Principal position.

Q. And then where are we now? What year?

A. Hum. That is '89 -- '90. I'm a little uncertain. So I think it was '98 or '99.

Q. After that?

A. I was an Assistant Principal for about four years.

And then an opening came up for a Principal in the Early Childhood Center in Nassau BOCES.

And I was a Principal there for ten years.

And the pre-school closed due to funding issues and so forth.

And I was transferred back to Rosemary Kennedy, where I had started as a Teacher.

Q. What did you do at Rosemary Kennedy at that time?

A. I am the Principal for the lower school.

Q. Since what year?

A. Since what year? Since -- this is my fifth year.

I had to think about that. I think -- I am beginning my fifth year.

MS. LINEEN: Going into your fifth year?

THE WITNESS: I believe so.

I am actually thinking about that. I think it is.

Q. The student population that you are a Principal of is Special Education?

A. Yes.

Q. During the period that you were Principal and that you are Principal, how many post-observation conferences have you attended?

A. For any staff members?

Q. Yes, for any staff members.

A. Many.

Q. You testified earlier with respect to a post observation with Miss Peritz and Miss Weisel.

Did you take any notes in connection with that post observation involving --

A. No.

Q. -- Miss Weisel?

You didn't take any notes at all?

A. During it?

Q. Yes, during it.

A. No.

Q. Have you ever heard of a student named ES?

A. ES?

Q. Yes.

A. No.

Q. Regarding Miss Peritz, are you aware of the fact that a CCA Principal considered Miss Peritz a satisfactory Occupational Therapist?

MS. LINEEN: Objection.

You can answer.

A. Can you repeat the question?

Q. Yes.

MS. LINEEN: She can read it back for you.

(Requested portion of the record read by the reporter.)

A. Yes. And now I am. I mean, yes.

Q. When you say now you are, when did you first learn that he considered her a good therapist?

A. When Miss Peritz wrote back to me after that -- after the letter that I had sent to her when we had a meeting with other administrators.

Q. Did you have a conversation with him?

A. With him?

Q. Yes.

A. No.

Q. Wouldn't that have been a reasonable thing to do, considering she was being evaluated by the schools, the BOCES

schools?

MS. LINEEN: Objection.

You can answer.

A. Not always.

Q. I asked you earlier about how many post-observation conferences you've attended since you have been a Principal, and you said many.

Does that include post-observation conferences including Occupational Therapists?

A. I don't recall if I sat in on others with OTs.

Q. You testified earlier with respect to Miss Peritz, that you became somewhat familiar with her in September of 2015?

MS. LINEEN: Objection to the form and characterization of the testimony.

You can answer.

A. Yes.

Q. I am sorry. I know I asked you this before. I just want to make sure I

understand what you answered.

What did you learn in September of 2015?

A. That there had been an accommodation meeting.

Q. How soon after the accommodation meeting did you learn this in September?

A. I believe it was the same day.

Q. Then with respect to October, what did you learn in October about her accommodation?

A. That a second doctor's note had been provided and another meeting was held.

Q. With respect to evaluations of Miss Peritz, were you familiar with the fact that there was an observation in the spring of 2015 with respect to Miss Peritz treating a student?

A. I don't recall when I knew that.

Q. But you did come to know that with respect to the spring of 2015?

A. Yes.

MS. LINEEN: Note my objection to form.

Q. You testified earlier that you learned that some Aides had concerns about Miss Peritz?

MS. LINEEN: Objection.

You can answer.

A. One Aide.

Q. How did you get that information?

A. So she spoke to me. And I asked her to write her concern.

Q. I'm sorry. I may have asked you this already as well.

When did that occur? What month?

A. The 1st or 2nd of October.

Q. Do you know who Selina Roberts is?

A. I do.

Q. Who is she?

A. She is an Occupational Therapist. And she was the Lead Therapist for a period of time.

Q. Did you ever instruct her to follow Miss Peritz around the school?

A. No.

Q. Did Selina Roberts have any

involvement in evaluating Miss Peritz?

A. No.

Q. With respect to observations of Occupational Therapists, are those evaluations always in writing?

MS. LINEEN: Note my objection to form.

You said observations and then you said evaluations.

MS. KALLUS: I'm sorry. I meant observations.

A. I don't know.

Q. After Miss Peritz's observation in September, did you reach out to any of her references with respect to her abilities, performance?

A. No.

Q. Did you reach out to her after her observation in October?

Did you reach out to any of her references about her performance?

A. No.

Q. Who did you speak to with respect to Miss Peritz's performance within the

school?

MS. LINEEN: At any time?

MS. KALLUS: After September and/or October of 2015.

MS. LINEEN: Objection to the form.

You can answer.

A. John Picarello, Janet, you know, my administrators in Central Office.

Q. Can you name the administrators?

A. Barbara Longo.

I am not sure if I spoke with anyone else.

Q. You just mentioned that you spoke to John.

What was that conversation?

A. Well, we are Co-Principals. We were Co-Principals. And we would review what's happening with staffing. We did talk about the accommodation.

Q. What else?

A. And the meeting that we had. The meeting that -- the post-observation conference that I sat in on with Janet.

Heller

Q. What did John Picarello say to you when you said you spoke to him?

A. I don't recall the exact -- I don't recall the exact conversation.

Q. So you mentioned earlier an Aide spoke to you about Miss Peritz.

A. Um hum.

Q. You said you asked her to write it up?

A. Um hum.

MS. LINEEN: Is that a yes?

A. Yes. I'm sorry.

MS. LINEEN: That is okay.

MS. KALLUS: I'm just going to ask for you to produce the write up by the Aide.

MS. LINEEN: For the record, I believe that has already been produced to you in the series of documents that I e-mailed you last week.

MS. KALLUS: The ones that were produced via e-mail and not on paper?

MS. LINEEN: Right.

MS. KALLUS: I will take a look

at that. And if it is not there, please produce it.

MS. LINEEN: As with anything, I request that you follow up in writing with all requests made here today.

We will take it under advisement.

MS. KALLUS: Let's take a break.

(At this time a recess was taken.)

MS. KALLUS: We are concluding this deposition.

We ask for any documents be produced that we asked for that we don't already have.

I will double-check as to the notes we spoke about earlier.

MS. LINEEN: I just have one question.

EXAMINATION BY

MS. LINEEN:

Q. Miss Heller, as you sit here today, are you certain whether Miss Weisel had written up an observation of the Plaintiff when you attended the post-observation

conference that you spoke about?

A. No.

MS. LINEEN: I don't have any further request questions.

I'm just going to request that the witness be provided with a copy and the right to review and sign the transcript.

MS. KALLUS: Of course.

(Time noted: 11:21 a.m.)

A C K N O W L E D G M E N T

STATE OF NEW YORK )
:ss
COUNTY OF NASSAU )

I, BONNIE HELLER, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of July 11, 2017; that the transcript is a true, complete and correct record of my testimony, and that the answers on the record as given by me are true and correct.

________________________
BONNIE HELLER

Signed and subscribed to before
me, this day
of , 2017.

________________________
Notary Public, State of New York

------------------I N D E X------------------

| WITNESS | EXAMINATION BY | PAGE |
| --- | --- | --- |
| BONNIE HELLER | MS. KALLUS | 4 |

---------------DOCUMENT REQUEST---------------

| PAGE | |
| --- | --- |
| 37 | Produce write up by Aide about Miss Peritz |
| 39 | Provide witness for copy of transcript to review and sign |

C E R T I F I C A T E

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

I, FLORENCE SYSKROT, a Notary Public within and for the State of New York, do hereby certify:

That BONNIE HELLER, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of July, 2017.

Florence Syskrot

-----------------------

FLORENCE SYSKROT

Errata Sheet

NAME OF CASE: DIANE PERITZ - against - NASSAU COUNTY BOARD OF EDUCATION

DATE OF DEPOSITION: 07/11/2017

NAME OF WITNESS: BONNIE HELLER

Reason Codes:

1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

_______________________

**1**

**11795** 4:13
**11th** 21:8
**1989** 27:18
**1st** 34:14

**2**

**2015** 13:3,8,16 14:9 15:3,21 17:14,19 32:18 33:4,18,22 36:5
**2850** 4:12
**2nd** 34:14

**8**

**89** 28:13

**9**

**90** 28:13
**98** 28:14
**99** 28:15

**A**

**abilities** 35:16
**accommodation** 13:15,17,21,24 14:3 20:9,23 21:3,6 23:17 33:6,7,12 36:21
**accommodations** 20:8 23:4
**actual** 25:21
**actually** 7:24 10:15 29:17
**address** 4:11
**Adelphi** 25:25
**Administration** 26:4 28:8
**administrators** 20:2 31:17 36:10,11
**admitted** 16:18
**adults** 26:15
**advisement** 38:7
**after** 16:14 19:24 26:17,18, 20,21 27:13,17 28:3,16 31:15 33:7 35:14,19 36:4
**again** 18:4 25:10,11
**ahead** 7:13 8:16,24 18:22
**Aide** 34:7 37:6, 17
**Aides** 34:3
**all** 5:22 9:23 10:20 18:4,19 23:15 24:4 27:24 30:13 38:6
**along** 19:10
**already** 23:12 34:12 37:19 38:15
**always** 32:5 35:6
**am** 4:16 16:17 29:7,13,17 31:10 32:24 36:13
**an** 4:16 7:16 8:13 9:4,17 13:14,17,21,24 20:23 24:19,25 28:9,17,19 33:5, 17 34:19 37:6 38:24
**and/or** 36:5
**another** 33:14
**answer** 5:2,3 7:2,4,5,13,21 8:8,16,24,25 10:8 12:15 13:13 16:2 17:25 22:7,13, 20 23:22 24:7 25:4,10 28:5 31:3 32:4,22 34:6 36:8
**answered** 25:9 33:2
**answers** 24:16
**any** 5:4,7,18,20, 21,22 9:4 11:3 12:25 14:12,23 15:22 16:8,15 26:5 30:2,3,8,13 34:25 35:15,21 36:3 38:13
**anyone** 9:17 36:14
**anything** 38:4
**appear** 23:2 24:4
**appeared** 20:21 22:9 23:7
**around** 8:11 22:10 34:23
**ask** 4:24 11:11, 20 16:19 25:21 37:16 38:13
**asked** 12:2 25:9 32:6,24 34:9,11 37:9 38:14
**asking** 4:19 11:12
**Assistant** 28:9, 17
**at** 5:16,22 7:19 9:19,20 10:3,11, 20 11:3 13:9 14:2 15:20 16:6 17:21,22,23 18:12,15 22:24 25:17 27:6,19, 22 29:5,6 30:13 36:3 38:2,9
**attempt** 20:16
**attend** 6:8
**attended** 29:25 32:8 38:25
**attorney** 4:17
**autism** 27:10
**aware** 13:9,14, 16,20 14:11 21:11 30:23
**away** 5:2

**B**

**back** 6:4,15 18:22 19:19 20:4 23:8 24:5, 19 25:3,8 26:23 27:3 29:2 31:6, 14
**backgrounds** 9:24
**Barbara** 36:12
**based** 10:9 20:8
**became** 13:20 32:16
**because** 11:15 23:7 24:7
**become** 9:5
**been** 4:3 18:2 31:23 32:8 33:5, 14 37:19
**before** 4:21 5:3 14:11,15 16:13 18:24 24:15 32:25
**began** 27:19
**beginning** 29:13
**behavioral** 27:12
**being** 31:25
**believe** 29:16 33:9 37:19
**between** 26:13
**Biology** 6:13
**Birch** 27:15
**Board** 9:10,12, 17,22 10:2,4,17 24:3,13
**BOCES** 4:12 9:12 10:17 14:16,19 16:7 17:21,22,23 27:18,20 28:21 31:25
**body** 20:24
**Bonnie** 4:10 5:13
**Boston** 26:22
**break** 25:15,16 38:8
**building** 6:2 8:11
**but** 7:16 8:5,24 19:18 25:20 33:21

**C**

**called** 4:2
**calling** 23:21,23
**came** 20:15 27:18 28:19
**can** 5:14 7:2,12, 21 8:16,18,24 10:8 11:20 12:15 13:13 16:2 17:25 22:7, 13,20 23:22 24:23 25:4,5,10, 11 28:5 31:3,4,6 32:4,22 34:6 36:8,11
**can't** 8:25
**case** 16:19
**causing** 23:8
**CCA** 30:23
**Center** 28:20
**Central** 36:10
**certain** 38:23
**certificate** 28:8
**certification** 5:24 6:3,19
**changes** 10:2
**characterization** 23:20 32:20
**characterize** 24:14
**Childhood** 28:20
**children** 24:20

Christopher 27:6
clarify 5:6 11:15
Classified 17:13 19:3
classroom 7:15 20:16 27:21
classrooms 8:10
closed 28:24
Co-principal 13:25 14:4
Co-principals 36:18,19
college 6:8,10 25:22 26:3,11, 17,18
come 13:23 33:21
completed 28:7
concern 20:6, 13 24:11 34:10
concerns 12:12 14:12 15:8,21 20:12 22:23 24:2 34:3
concluding 38:11
conclusion 23:21,24
condition 23:8 25:3
conducted 15:7
conference 36:25
conferences 29:24 32:7,11
confusing 11:16
connection 10:17 30:9
consider 22:25
considered 30:24 31:12
considering 22:21 31:24
contents 19:6
continues 8:23
conversation 11:23,24 12:22 13:6 14:8 15:12 31:18 36:17 37:5
conversations 13:2 15:4
could 5:11 7:6 18:12
couldn't 21:8
County 16:6
couple 20:5
course 4:20
criticisms 21:21
current 5:15
CV 14:19

D

date 14:11
dated 17:14
day 33:9
degree 6:12,14 26:7,8,19
degrees 5:18, 21 6:21 25:20 26:5
departments 27:25
deposition 19:21 38:12
describe 5:14
described 22:16
determination 9:11,13,22 10:5, 9,21,25
determine 8:13 9:4
determines 9:8
developmental 27:10
Diane 4:17 10:21 14:18 17:15,19
didn't 20:19,20 23:5,12 24:7 25:20,21 30:13
different 20:9 26:25 27:24
direct 24:6
disabilities 27:10
disability 13:10
disciplinary 19:25
discuss 19:6
discussed 21:15
discussion 12:6,13
District 6:2
doctor's 21:14 33:13
document 12:17 17:4 18:7
documents 16:18 19:20 37:20 38:13
does 9:8 19:18 32:10
doesn't 7:3 11:21
doing 7:19 8:14 27:5
don't 4:23 5:4 7:24 8:4 9:2,3, 23 10:19 11:10 12:24 15:19 18:2,3 23:2,16 24:18 25:7 32:13 33:20 35:13 37:4,5 38:14
double-check 38:16
dual 5:24 6:19
due 28:24
duly 4:3
during 4:20 29:22 30:14,15

E

e-mail 37:23
e-mailed 37:21
e-mails 20:7
earlier 14:7 20:22 25:19 30:5 32:6,15 34:2 37:6 38:17
early 21:14 28:20
Ed 5:25
education 6:4, 16 25:22 26:2, 10 27:4 29:20
educational 5:21
Elementary 5:25
else 36:14,22
emotional 24:19
employed 11:6 14:16
employee 10:4, 13,22 11:6 17:13
Employer 19:4
employment 10:22
end 23:10
engage 20:16
Environmental 6:13
ES 30:18,19
establish 20:20
evaluate 9:2,3
evaluated 31:25
evaluating 35:2
evaluation 16:9,15 17:13 19:4
evaluations 15:22 16:4 17:20 33:15 35:5,10
ever 17:12 18:24 19:6 30:17 34:22
exact 37:4,5
EXAMINATION 4:6 38:20
examined 4:4
example 25:23
Exhibit 17:2 18:5,8,9
exhibits 16:19
expert 24:25
expressed 15:21 20:11 24:3
expressing 20:6
extent 7:12 23:20 24:24

F

fact 13:20 30:23 33:16
familiar 6:22 7:8,14 32:17 33:16
family 26:24
fearful 20:21 22:9 23:7
feel 4:25
few 4:22 16:20 26:24
fifth 29:11,13,15
final 9:10,12,22
find 13:23
finish 5:2
finished 17:10, 11 27:14

**first** 4:23 12:21 13:6,19 14:8,18 15:2 21:7 22:25 23:2 27:19 31:12

**flow** 26:10

**follow** 34:23 38:5

**Following** 6:7

**follows** 4:5

**form** 6:25 7:20 8:7,15 10:7 12:14 13:12 15:25 19:17 21:24 22:19 23:18 24:22 28:4 32:20 33:25 35:8 36:7

**formal** 5:11 8:2, 4

**formally** 7:22

**forth** 28:25

**four** 28:18

**four-year** 6:14

**fresh** 22:24

**from** 5:8 6:5,10, 14 10:10 20:5 21:7 26:11 27:23

**full** 4:8

**funding** 28:25

G

**Geneseo** 25:24

**get** 12:8 24:15 28:2 34:8

**Getting** 6:4

**given** 6:21

**go** 4:22 7:13 8:16,24 18:22 26:11

**going** 4:19 10:6 12:16 16:17,19 17:5 19:19 24:6, 14,21 29:14 37:15

**good** 4:14,15 25:14 31:13

**got** 27:15

**graduate** 6:5,10 26:11

H

**hand** 20:19

**Handing** 17:3 18:11

**happened** 28:3

**happening** 36:20

**has** 11:18 37:19

**having** 4:3 12:25

**he** 14:3 31:12

**heard** 30:17

**held** 33:14

**Heller** 4:10,14 5:1,13 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1,22

**her** 7:4 10:5 12:8,11 14:19, 20 15:8 16:5 19:11 20:23 21:15,18 23:3,4, 6,9,16 24:4,7,15 25:8 31:12,16 32:17 33:11 34:10,22 35:15, 16,19,20,21,22 37:9

**here** 13:5 24:25 38:6,22

**high** 6:5,7 27:23

**him** 31:19,20 37:3

**hiring** 14:24

**hold** 20:19

**home** 27:9

**how** 6:22 7:8 13:23 16:5 29:23 32:6 33:7 34:8

**hum** 9:14 12:7 28:13 37:8,11

**hypothetical** 23:19

I

**immediately** 26:11,17

**include** 32:10

**including** 26:25 27:10 32:11

**indicated** 23:13,15

**informal** 8:5

**information** 12:3 34:8

**informed** 14:3

**input** 10:10

**institution** 26:14

**instruct** 34:22

**instructions** 4:22 7:4

**interact** 20:20

**into** 20:15 29:14

**involved** 10:20, 23 12:19 20:23 21:21

**involvement** 35:2

**involving** 16:9 30:10

**island** 26:23

**issue** 22:10 24:20

**issues** 22:17 23:3 24:10 28:25

**item** 22:16

**items** 22:22 23:15,25 24:10, 18

J

**Janet** 10:14,15, 16,24 11:8,22, 25 12:22 24:4 36:9,25

**Jerusalem** 4:12

**job** 8:14 27:15

**John** 14:5 36:9, 16 37:2

**joined** 14:19

**June** 17:14

**just** 4:21 5:2 8:3, 9,19 9:21 16:19 17:4,6,9 18:15, 17 19:9,19 21:20,25 22:3, 21,24,25 32:25 36:15 37:15 38:18

K

**Kallus** 4:7,16 8:18 9:20 11:5, 10,20 16:23 17:2,22 18:8,10 20:25 23:23 24:9,23 25:14 35:11 36:4 37:15,22,25 38:8,11

**Kennedy** 5:17 29:3,6

**kids** 27:2

**kinds** 26:12

**knew** 33:20

**know** 4:25 5:6 9:23 10:19 14:15 15:19 17:9,18 18:2 20:13,24 21:2,4, 16 27:11 32:24 33:21 34:15 35:13 36:9

L

**last** 37:21

**lawsuit** 4:18

**Lead** 34:20

**learn** 31:12 33:3,8,11

**learned** 34:3

**Lee** 5:13

**leery** 23:9

**legal** 23:21,24

**let** 5:5 12:8 17:9

**let's** 22:25 25:16 38:8

**letter** 19:22 20:3 31:15

**lift** 21:8

**like** 7:15

**LINEEN** 6:24 7:10,20 8:7,15, 22 9:15,19,25 10:6 11:3,7,12 12:8,14 13:11 15:24 16:21,25 17:3,6,21,24 18:6,9,11,14,18, 21 19:16 21:23 22:6,12,19 23:10,18 24:6, 12,21,24 25:9 26:7 28:4 29:14 31:2,6 32:3,19 33:24 34:5 35:7 36:3,6 37:12,14, 18,24 38:4,18, 21

**little** 28:14

**Long** 26:23

**Longo** 36:12

**look** 18:12,15 37:25

**looking** 22:24

**looks** 7:15

**Lorraine** 10:14

**lot** 19:10

**lower** 29:7

M

**made** 38:6

**Maintain** 7:10

**make** 10:4,9 32:25

**makes** 9:10,12, 22

**many** 29:23 30:4 32:7,9

**marked** 16:22

**Master's** 6:15, 17,18 25:25 27:4,6,14

**may** 4:25 8:5,8,9 34:11

**me** 4:24 5:5 11:11,20 12:2 14:3 15:9 17:9 20:4 31:14 34:9

**mean** 7:3 8:17 16:11 31:10

**meant** 35:11

**medications** 5:7

**meeting** 14:3 15:17 16:11,14 19:24,25 21:8, 13 31:16 33:6,8, 14 36:23,24

**meetings** 20:9

**member** 20:11 24:13

**members** 20:6 30:2,3

**mention** 23:12

**mentioned** 20:10 21:20 36:15 37:6

**might** 23:7 25:14

**Mindy** 4:16

**minute** 18:13 19:20

**Miss** 4:14 10:3, 12,17,25 11:5, 25 12:3,23 13:2, 7,10,20 14:8,9, 12,13,15,24 15:2,3,10,16,20, 21 16:4,9 19:7, 23 20:3,15,22 21:3,21 22:4,17, 23 24:11 30:6,7, 12,22,24 31:14 32:16 33:16,18 34:4,23 35:2,14, 25 37:7 38:22, 23

**month** 34:13

**more** 21:8

**morning** 4:14, 15,20 5:9

**moved** 26:23

**Ms** 4:7 6:24 7:10,20 8:7,15, 18,22 9:15,19, 20,25 10:6 11:3, 5,7,10,12,20 12:8,11,14 13:11 15:24 16:21,23,25 17:2,3,6,21,22, 24 18:6,8,9,10, 11,14,18,21 19:16 20:25 21:23 22:6,12, 19 23:10,18,23 24:6,9,12,21,23, 24 25:9,14 26:7 28:4 29:14 31:2, 6 32:3,19 33:24 34:5 35:7,11 36:3,4,6 37:12, 14,15,18,22,24, 25 38:4,8,11,18, 21

**my** 4:16 6:15 8:22 11:11 13:11 15:15,24 19:16 21:23 22:6 23:15 24:17 25:25 26:18 27:3,5,14 28:8 29:11,13 33:24 35:7 36:10

N

**name** 4:8,16 5:11 36:11

**named** 30:18

**Nassau** 4:12 14:16 16:6 28:21

**nature** 23:19

**need** 18:6,21 21:15

**needs** 26:15 27:2,11

**New** 4:13 26:3

**no** 5:10 8:2 9:7 10:23 12:20 13:4 14:17,22, 25 16:10,13,16 17:17 19:2,5 21:12 25:6,11, 13 30:11,16,21 31:22 34:24 35:3,18,23

**not** 7:4,16,22 8:2,13,17 9:2 10:23 11:12 14:14 16:3 19:18 20:16 21:15 23:23 24:7,13,25 32:5 36:13 37:23 38:2

**Notary** 4:3

**note** 13:11 15:24 19:16 21:14,23 22:6 33:13,24 35:7

**notes** 20:5,11 30:8,13 38:17

**now** 18:4 21:20 22:25 28:11 31:10,11

**number** 16:17

O

**object** 7:20 8:15 10:6 24:21,23

**objection** 6:24 7:11 8:7,22 12:14 13:11 15:24 17:24 19:16 21:23 22:6,12,19 23:18 28:4 31:2 32:3,19 33:24 34:5 35:7 36:6

**observation** 12:3,19 15:6,13 19:10,12 30:6,9 33:17 35:14,20 38:24

**observations** 7:24 8:2,5,6 35:4,9,12

**observe** 7:18

**observed** 16:6

**Occupational** 6:22 7:9,18,25 8:13 9:18 19:14 30:25 32:12 34:19 35:5

**occur** 19:18 34:13

**October** 13:8, 16 14:9 15:3,21 17:19 21:14 33:10,11 34:14 35:20 36:5

**office** 15:15,17 36:10

**okay** 7:6 18:18 37:14

**on** 8:11 9:17 10:10 14:2 19:14 20:8 32:13 36:25 37:23

**one** 6:17,18 21:7,10 22:17 34:7 38:18

**ones** 16:21 37:22

**only** 21:10

**opening** 28:19

**opposed** 24:19

**OT** 7:16 9:4 10:10,11

**other** 5:18 7:23 19:25 21:17 26:12 27:11 31:16

**others** 16:13 32:14

**OTS** 9:2,3 32:14

**Ottilie** 27:7

**our** 19:24

**out** 8:10 12:9 13:23 20:18 35:15,19,21

**over** 4:22,24

P

**P-I-C-A-R-E-L-L-O** 14:6

**paper** 37:23

**part** 7:15,17 9:5 14:23 16:5

**parts** 19:9

**perform** 6:23 7:9,24

**performance** 10:5 35:17,22, 25

**period** 29:22 34:20

**Peritz** 4:17 10:3, 12,18 11:5,25 12:4,23 13:3,7, 10,20 14:9,13, 15,19,24 15:3, 11,16,22 16:5,9 19:23 20:4,15, 23 21:3,21 22:4, 17,24 24:11 30:6,22,24 31:14 32:16 33:16,18 34:4, 23 35:2 37:7

**Peritz's** 10:21 11:2 35:14,25

**permanent** 9:5

**Perusing** 17:8 18:16

**physical** 27:11

**Picarello** 14:5 36:9 37:2

**place** 15:13,18, 23

**places** 26:25

**Plaintiff** 4:17 38:24

**please** 4:8,23 5:5 38:2

**population** 29:19

**portion** 8:20 31:8

**pose** 5:5

**posed** 8:19

**position** 5:15 7:17 8:12 9:4 11:2 28:10

**positions** 25:20

**post** 15:13 19:11 30:6,9

**post-observation** 12:5,13,17 15:9 19:14 29:24 32:7,11 36:24 38:25

**pounds** 21:9

**pre-school** 27:16,23 28:24

**preparation** 19:21

**prepare** 10:16

**present** 15:10, 18 20:2

**prevent** 5:8

**previously** 16:18

**Principal** 5:16, 19 6:20 7:18 9:6 28:9,17,20,22 29:7,20,23 30:23 32:8

**prior** 16:11 17:12,18

**probationary** 10:4,12,22 11:6

**problem** 24:19 25:8

**problems** 24:5

**produce** 37:16 38:3

**produced** 37:19,23 38:14

**programs** 27:2

**promoted** 28:2

**promotion** 28:9

**provided** 33:14

**PT** 10:15

**Public** 4:4

**pull** 21:18 23:6

**pulled** 21:15

**purpose** 12:12

**Q**

**Queens** 27:16

**question** 4:24 5:3,5 7:7 8:19 9:2 11:11,13,14, 15 12:9 17:5,7 18:14 23:11,15, 22 24:16,17 25:4 31:4 38:19

**questions** 4:20 16:20 25:21

**quick** 25:15

**R**

**Raised** 24:12

**rapport** 20:21

**reach** 35:15,19, 21

**read** 8:21 18:21 31:6,9

**reading** 17:10 18:17

**really** 8:25 24:17

**reasonable** 31:24

**reasons** 26:24

**recall** 12:18,24, 25 13:6 14:14 18:3 32:13 33:20 37:4,5

**received** 17:19 28:9

**recess** 25:17 38:9

**record** 4:9 5:12 8:20 9:25 31:8 37:18

**referenced** 9:21

**references** 35:16,22

**refused** 20:18 22:4 23:13,14

**refusing** 21:21

**Regarding** 30:22

**related** 5:19 23:3,16 24:4,18 25:3,7

**relates** 25:2

**relating** 23:3 24:20

**relaying** 11:14

**repeat** 7:6 8:18 31:4

**report** 10:16 15:9 17:14 19:4, 7,11

**reporter** 8:21 31:9

**reports** 16:9,15 19:14

**request** 38:5

**requested** 8:20 31:8

**requests** 38:6

**residential** 26:25

**respect** 11:25 14:13 22:23 24:11 30:6 32:16 33:10,15, 18,22 35:4,16, 24

**resume** 14:20

**review** 12:17 14:19 15:22 16:8,14 17:4 19:20 36:19

**reviewed** 12:3 15:6,10 16:6 19:22 20:3,7,8, 10

**right** 5:2 11:18 20:24 21:19,22 22:25 23:14 24:15 37:24

**Road** 4:13

**Roberts** 34:15, 25

**Rochelle** 26:4

**role** 6:20

**Rosemary** 5:17 29:3,5

**S**

**said** 9:21 32:9 35:9,10 37:3,9

**same** 33:9

**sat** 14:2 19:11 32:13 36:25

**satisfactory** 8:14 17:20 30:24

**say** 25:11 31:11 37:2

**saying** 7:23

**school** 5:16,17, 19 6:2,5,7 7:19 24:3 26:4,12 27:23,24 28:8 29:8 34:23 36:2

**schools** 31:25 32:2

**Science** 6:13

**second** 21:13, 14 22:10 33:13

**see** 8:9

**seem** 23:16 24:18 25:7

**seen** 17:13 18:24 19:3

**Selina** 34:15,25

**sent** 19:23 31:15

**September** 13:22,24 21:7 32:17 33:3,8 35:15 36:4

**series** 37:20

**serious** 23:8

**Services** 27:15

**set** 18:19

**she** 9:20,21 11:7,20,21 12:2, 16 13:14,17 14:16 15:6,7,8, 9,10 16:6 20:16, 17 21:8,25 22:9, 15 23:5,6,7,13 24:7,9,15,25 31:6,24 34:9,18, 19,20

**should** 9:5

**shouldn't** 7:4,5 21:18

**show** 16:17

**since** 29:9,10 32:8

**sit** 12:2 13:5 19:13 38:22

**sole** 24:17

**some** 4:19 15:7 34:3

**somewhat** 23:9 32:17

**soon** 33:7

**sorry** 9:16 12:10 14:7 15:14 18:16 19:2 32:24 34:11 35:11 37:13

**speak** 4:23 10:24 11:8 35:24

**speaking** 11:17

**special** 5:25 26:15 27:2 29:20

**spinal** 23:4

**spoke** 11:22,24 15:2 25:19 34:9 36:13,15 37:3,7 38:17

**spring** 13:3 33:17,22

**St** 27:6

**staff** 20:6,11 24:12 30:2,3

**staffing** 36:20

**start** 4:21 5:3

**started** 29:3

**state** 4:8 5:11 26:14

**stenosis** 23:4

**still** 11:7

**Strike** 20:25

**student** 12:18 20:17 21:16,17 29:19 30:17 33:19

**students** 8:10 21:22 22:5,10 23:5,14 27:9

**suggesting** 8:3

**supervision** 26:6,8

**Supervisor** 10:10,11

**sure** 8:17 16:3 32:25 36:13

**sworn** 4:3

T

**take** 14:23 15:12,13,17 25:16 30:8,13 37:25 38:7,8

**taken** 5:7 15:23 25:18 38:10

**taking** 20:17

**talk** 15:5 36:20

**talked** 20:7

**teach** 26:12

**Teacher** 27:16, 21,25 29:4

**teaching** 28:7

**team** 7:16

**tell** 12:11 15:16

**ten** 21:9 28:23

**terminate** 10:21,25

**testified** 4:4 8:4 14:7 20:22 22:2, 4,11,22 24:2,9 30:5 32:15 34:2

**testify** 24:8,25

**testifying** 5:8

**testimony** 24:15 32:21

**than** 21:9

**Thank** 8:19 18:23

**that's** 16:5

**their** 6:23 7:9,19 9:23 20:19

**them** 8:9 16:20, 23 20:18,20 22:15,24 23:2

**then** 25:25 26:3, 23 27:3,5,13 28:11,19 33:10 35:9

**therapist** 8:14 9:18 30:25 31:13 34:19,20

**Therapists** 6:22 7:9,18,25 19:15 32:12 35:5

**therapy** 20:18

**there** 11:8 13:24 16:4 21:13 28:22 33:5,17 38:2

**these** 23:15 24:10,18 25:2

**they** 10:9 22:24 23:2,6,16 25:7

**thing** 31:24

**think** 28:14 29:12,13,18

**thinking** 29:17

**third** 22:16

**those** 35:5

**three** 22:22 23:15,25 24:10, 18

**through** 18:17 27:23

**time** 9:19,20 10:3,12 11:3,16 12:21 13:9,19 14:2,18 15:20 19:19 22:25 23:2 25:15,17 27:22 29:6 34:21 36:3 38:9

**today** 13:5 17:12 18:24 19:21 38:6,23

**together** 19:24

**told** 18:2

**touch** 20:18 21:22 22:5,15 23:5,14

**touching** 23:9

**transferred** 29:2

**treating** 33:18

**true** 21:22,25 22:3

**truthfully** 5:9

**two** 17:5 18:13 20:9

**typical** 19:13,18

U

**Um** 9:14 12:7 37:8,11

**uncertain** 28:14

**under** 38:7

**undergraduate** 25:24 26:18

**understand** 5:4 11:19,21 16:3 33:2

**until** 5:2

**up** 15:8 28:19 37:10,16 38:5, 24

**upper** 20:24

V

**very** 23:8

**via** 37:23

W

**wait** 5:2 17:6 18:14

**want** 4:21 16:21 20:19 23:5 25:11 32:25

**Wantagh** 4:13

**wanted** 15:9

**way** 14:23 22:2 24:8

**week** 37:21

**Weisel** 10:14, 15,16,24 11:8 12:11,22 13:2,7 14:8,12 15:3,16, 20 19:7 24:4 30:7,12 38:23

**well** 19:9 26:21 34:12 36:18

**went** 6:15 19:10 25:22 27:3,23

**were** 10:20 12:12 13:9,16 14:11 16:4,18 20:2 22:22,23 24:2,10 29:22 33:16 36:19 37:22

**what** 4:11 5:14 6:12 7:14,15 8:17 9:5 11:16, 23 12:11,12 15:4 19:20 20:13 21:2,4,6 22:21 26:20 27:8,13,20 28:2, 11 29:5,9,10 33:2,3,11 34:13 36:17,22 37:2

**what's** 36:20

**when** 4:24 8:10 9:21 11:24 12:2 13:6,19 14:18 15:2,10 17:9 19:11 20:15 26:16 27:19 31:11,14,16 33:20 34:13 37:3 38:25

**where** 15:12 19:25 25:22 28:11 29:3

**whether** 8:13 9:4 25:2 38:23

**which** 12:18 16:25 27:15

**while** 11:5,7 27:5 28:7

**who** 9:8 10:11 14:4 20:11 34:15,18 35:24

**whoever** 24:13

**with** 6:22 7:8,14 8:9 10:17 11:22, 25 12:3,22 13:2, 6 14:2,8,12 15:10,18 19:7, 10,11 20:20 22:23 24:11 26:15 27:2,9 30:5,6,9 31:16, 18,20 32:14,15, 17 33:10,15,16, 18,22 35:4,16, 24 36:13,20,25 38:4,6

**within** 35:25

**witness** 4:2 9:16 11:18 18:20,23 29:16

**words** 7:23 21:17

**work** 5:19 6:23 7:9,19 26:13

**worked** 13:25 26:14,24 27:22, 24

**working** 8:9 27:6,19

**would** 5:8 15:17 36:19

**wouldn't** 22:15 23:6 31:23

**write** 34:10 37:9,16

**writing** 35:6 38:5

**written** 15:8 38:24

**wrote** 20:4 31:14

Y

**year** 28:12 29:9, 10,11,13,15

**years** 28:18,23

**yes** 5:23 6:6,9, 11 9:15,16 11:4, 22 12:10 13:18 14:10,21 16:12, 24 17:16 18:8, 10,20 19:8 21:5 22:4,8,14,18 26:9 28:6 29:21 30:3,15,20 31:5, 10,21 32:23 33:23 37:12,13

**York** 4:13

**you've** 32:7

**your** 4:8,11 5:3, 11,14,19 6:4,20 7:17,19 11:14, 15 14:8 15:17 23:11 25:19,20, 21 26:10 29:14